# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

IN RE APPLICATION OF **PERUVIAN SPORTING GOODS S.A.C., SUPERDEPORTE S.A.C., and RODRIGO RIBADENEIRA** FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Case No. _____

## MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR DISCOVERY IN AID OF A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

THE PARTIES.............................................................................................................................. 1

FACTUAL BACKGROUND ....................................................................................................... 1

ARGUMENT ................................................................................................................................ 4

I.     Petitioners Satisfy the Statutory Factors Governing Discovery Under Section 1782
       ..................................................................................................................................... 4

II.    Petitioners Satisfy the Discretionary Factors For Discovery Under Section 1782 ............. 5

       A.     Evidence Held by New Balance Is Likely Unobtainable Without Discovery
              Under Section 1782.................................................................................................. 6

       B.     The Peruvian Court Would Not Reject Assistance from Discovery Under
              Section 1782............................................................................................................. 7

       C.     Petitioners Are Not Attempting to Circumvent Foreign or U.S. Policies................ 7

       D.     The Discovery Sought Is Not Intrusive or Burdensome ......................................... 8

CONCLUSION.............................................................................................................................. 8

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Application of Ooo Promnefstroy,*
2009 WL 3335608 (S.D.N.Y. Oct.15, 2009) .......................................................................... 5

*In re Application of Republic of Ecuador v. Douglas,*
153 F. Supp. 3d 484 (D. Mass. 2015) ..................................................................... 4

*In re Babcock Borsig AG,*
583 F. Supp. 2d 233 (D. Mass. 2008) ..................................................................... 4

*In re Babcock Borsig AG,*
583 F. Supp. 2d 233 (D.Mass.2008) ......................................................................... 6

*Brandi-Dohrn v. IKB Deutsche Industriebank AG,*
673 F.3d 76 (2d Cir. 2012).......................................................................... 4, 7

*Chevron Corp. v. Shefftz,*
754 F. Supp. 2d 254 (D. Mass. 2010) ..................................................................... 4, 5

*In re Chevron Corp.,*
No. 7:10–MC00067, 2010 WL 4883111 (W.D.Va. Nov.24, 2010) .......................................... 6

*Intel Corp. v. Advanced Micro Devices, Inc.,*
542 U.S. 241 (2004)........................................................................... 4, 5, 6, 7

*In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.,*
No. 2:14-CV-00797-GMN, 2015 WL 3439103 (D. Nev. May 28, 2015)................................ 6

*In re Metallgesellschaft AG,*
121 F.3d 77 (2d Cir. 1997).............................................................................. 7

*Minis v. Thomson,*
No. MISC. 14-91050-DJC, 2014 WL 1599947 (D. Mass. Apr. 18, 2014)............................. 5

*In re Schlich,*
No. CV 16-91278-FDS, 2016 WL 7209565 (D. Mass. Dec. 9, 2016) ..................................... 5

## Statutory Authorities

28 U.S.C. § 1782.................................................................................................... 1

28 U.S.C. § 1782(a) ............................................................................................. 5

Petitioners Peruvian Sporting Goods S.A.C. ("PSG"), Superdeporte S.A.C. ("Superdeporte"), and Rodrigo Ribadeneira ("Mr. Ribadeneira") submit this memorandum of law in support of their Petition seeking to issue subpoenas pursuant to 28 U.S.C. § 1782 ("Section 1782") to New Balance Athletics Inc. ("New Balance"), John Cullen, Alan Hed, and William Tung for documents and testimony for use in an ongoing Peruvian proceeding.

## THE PARTIES

Rodrigo Ribadeneira ("Mr. Ribadeneira") is an Ecuadorian national and entrepreneur who has made investments in Peru and Ecuador through a number of companies in which he has a controlling interest, including Peruvian Sporting Goods S.A.C. and Superdeporte S.A.C.

Peruvian Sporting Goods S.A.C. ("PSG") is a distribution company organized and existing under the laws of Peru.

Superdeporte S.A.C. ("Superdeporte") is a distribution company organized and existing under the laws of Peru.

New Balance is an American sportswear company based in Boston, Massachusetts.

John Cullen is the General Manager for Latin America at New Balance in Boston, Massachusetts.

Alan Hed is an Executive Vice President (International) at New Balance in Boston, Massachusetts.

William Tung is also an Executive Vice President (International) at New Balance in Boston, Massachusetts.

## FACTUAL BACKGROUND

Petitioners seek discovery for use in aid of a Peruvian civil proceeding that Petitioners filed against New Balance regarding New Balance's abrupt and unexplained cancellation of an ongoing Distribution Agreement with PSG as well as the abrupt cancellation of a New Distribution

Agreement which had already been agreed to between New Balance and Superdeporte.  In the Peruvian case, Petitioners claim, *inter alia*, damages resulting from New Balance's unlawful conduct.  As employees of New Balance who were responsible for negotiating with Petitioners and deciding to not move forward with the New Distribution Agreement, Messrs. Cullen, Hed, and Tung have documents and knowledge needed as evidence for Petitioners' Peruvian proceedings.

On January 1, 2013, New Balance and PSG entered into a Distribution Agreement which governed the sale and distribution of New Balance's products in Peru.  The Distribution Agreement was valid for an initial term of three years.  If neither party expressed an intention to let the Distribution Agreement expire, then, by its terms, the Distribution Agreement would automatically be renewed for an additional year, until December 31, 2016.  Orta Decl. ¶ 10.

During 2015, New Balance proposed that PSG and New Balance enter into a new Distribution Agreement (the "New Distribution Agreement") for Peru that would take effect after the expiration of the Distribution Agreement with PSG on December 31, 2016.  New Balance specifically requested that PSG alter their distribution structure for New Balance products in Peru, in part by utilizing a new Peruvian entity that engages in retail distribution to serve as New Balance's exclusive distributor under the New Distribution Agreement.  New Balance stated that it required the new structure so as to gain an "unfair advantage" over its competitors in the Peruvian market.  Pursuant to New Balance's request, Mr. Ribadeneira initiated the legal process to allow Superdeporte to effectuate distribution in Peru under the New Distribution Agreement.  Orta Decl. ¶ 11.

The parties engaged in extensive negotiations, both in person and via email, over the coming months.  As discussions progressed, the parties discussed and agreed to a number of terms

for the New Distribution Agreement.  By the end of January 2016, all of the terms of the New Distribution Agreement were finalized and agreed to between the parties.  Orta Decl. ¶ 12. Petitioners were ready to execute the Agreement.  The only outstanding item was the creation of Superdeporte as the vehicle to serve as New Balance's exclusive distributor in Peru.  In December 2015, the parties agreed that the New Distribution Agreement would be finalized as between New Balance and PSG, and that once Superdeporte was established, Superdeporte would be substituted for PSG in the New Distribution Agreement.  This approach would allow the parties to finalize the New Distribution Agreement as soon as possible.  Orta Decl. ¶ 13.

In early May of 2016, Mr. Ribadeneira informed New Balance that despite some delays, Superdeporte had been established.  With Superdeporte up and running, Mr. Ribadeneira was ready to modify the New Distribution Agreement with New Balance to substitute in  Superdeporte (in place of PSG) as New Balance's exclusive Peruvian distributor.  As such, in order to finalize agreements with retailers, Mr. Ribadeneira asked New Balance for a letter confirming that Superdeporte was New Balance's distributor in Peru.  Orta Decl. ¶ 14.

On May 30, 2016, New Balance informed Mr. Ribadeneira that in fact no distribution agreement existed between New Balance and Superdeporte.  Shortly thereafter, on June 23, 2016, New Balance issued a termination letter to PSG, thereby terminating the Distribution Agreement. On July 8, 2016, New Balance informed Mr. Ribadeneira that New Balance had decided to work with another distributor in Peru. Orta Decl. ¶ 15.

Mr. Cullen was the primary person at New Balance responsible for negotiating the New Distribution Agreement.  Messrs. Hed and Tung, both superiors of Mr. Cullen, were responsible for Latin American sales and were involved in the decision to not move forward with the New

Distribution Agreement.  Mr. Tung assumed the role at New Balance just weeks before New Balance decided to not move forward with the New Distribution Agreement.  Orta Decl. ¶ 16.

In January 2017, Petitioners initiated civil, legal proceedings against New Balance in the Peruvian civil courts by filing a civil demand (the "Demand").  In the Demand, Petitioners argue that the parties had agreed to all of the essential terms of the New Distribution Agreement, creating a valid exclusive distributor contract between them, and that the parties' respective rights had been validly perfected.  If the Court were to find that there was not a valid contract, Petitioners also argue that New Balance had a pre-contractual liability to negotiate with Petitioners in good faith, particularly after requiring Petitioners to effectuate the New Distribution Agreement through Superdeporte, and that New Balance breached this pre-contractual obligation to Petitioners.  As a result, Petitioners argue that they are entitled to damages from New Balance.  Orta. Decl. ¶ 17.

On February 1, 2017, Petitioners filed a request with the Peruvian Court for interim measures, asking that the court order New Balance to abstain from the distribution of its products in Peru with any distributor other than PSG.  In December 2017, the Peruvian civil court granted Petitioners' request for interim measures.  The Peruvian court ordered a halt on the distribution of New Balance products in Peru during the pendency of the proceeding.  New Balance has continued distributing in Peru despite the order.  Orta. Decl. ¶ 18.

## ARGUMENT

### I.    Petitioners Satisfy the Statutory Factors Governing Discovery Under Section 1782

The purpose of Section 1782 is to enable parties like Petitioners to obtain "federal-court assistance in gathering evidence for use in foreign tribunals."  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  Section 1782 authorizes the Court to grant discovery for use in a proceeding in a foreign or international tribunal if: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made;

(2) the discovery is for use in a foreign proceeding before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012); *see Intel*, 542 U.S. at 241; *see also In re Babcock Borsig AG*, 583 F. Supp. 2d 233, 238 (D. Mass. 2008)*; Chevron Corp. v. Shefftz*, 754 F. Supp. 2d 254, 260 (D. Mass. 2010); *In re Application of Republic of Ecuador v. Douglas*, 153 F. Supp. 3d 484, 487 (D. Mass. 2015). Once the "statutory requirements are met, a district court is free to grant discovery in its discretion." *Id.* at 488; *see also Intel Corp.* 542 U.S. at 264. Petitioners easily satisfy these three factors.

First, the persons from whom discovery is sought, New Balance and Messrs. Cullen, Hed, and Tung, "reside[] or [are] found" in this District. 28 U.S.C. 1782(a). Each of Messrs. Cullen, Hed, and Tung work for New Balance in its Boston headquarters, at 100 Guest Street, Boston, Massachusetts 02135. *See* Orta Decl. ¶¶ 5-8.

Second, the discovery is for use in the pending Peruvian civil proceedings against New Balance. *See* Orta Decl. ¶¶ 18, 20. This District has held that foreign courts quality as a foreign or international tribunal within the meaning of the statute. *See e.g. Minis v. Thomson*, No. MISC. 14-91050-DJC, 2014 WL 1599947, at *1 (D. Mass. Apr. 18, 2014). As such, the Peruvian proceeding qualifies as a proceeding in a foreign or international tribunal.

Third, as named parties in the Peruvian action, Petitioners qualify as "interested persons." 28 U.S.C. § 1782(a); *Intel Corp.*, 542 U.S. at 256 ("No doubt litigants are included among ... the 'interested person[s]' who may invoke § 1782."); *see also* Orta Decl. ¶ 17.

## II.     Petitioners Satisfy the Discretionary Factors For Discovery Under Section 1782

Because Petitioners have satisfied the Section 1782 factors, the Court has discretion to grant the Petition. In considering whether to exercise this discretion, courts examine the factors that the Supreme Court set forth in *Intel*: (1) whether "the person from whom discovery is sought

is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of the foreign entity to judicial assistance"; (3) "whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery requests are "unduly intrusive or burdensome." *Chevron Corp. v. Shefftz*, 754 F. Supp. 2d 254, 261 (D. Mass. 2010) (citing *Intel*, 542 U.S. at 264). These factors are satisfied here, and the Petition should therefore be granted.

### A.    Evidence Held by New Balance Is Likely Unobtainable Without Discovery Under Section 1782

In applying this factor, courts have considered whether the discovery "is obtainable through the foreign proceeding." *In re Schlich*, No. CV 16-91278-FDS, 2016 WL 7209565, at *4 (D. Mass. Dec. 9, 2016), *reconsideration denied*, No. CV 16-91278-FDS, 2017 WL 1015005 (D. Mass. Mar. 15, 2017). *See also In re Application of Ooo Promnefstroy,* 2009 WL 3335608, *5 (S.D.N.Y. Oct.15, 2009); *In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*, No. 2:14-CV-00797-GMN, 2015 WL 3439103, at *6 (D. Nev. May 28, 2015).

Here, Messrs. Cullen, Hed, and Tung are not parties to the proceedings in Peru. While New Balance is a party to the proceedings in Peru, Peru does not have the same breadth of discovery that is available to litigants in U.S. federal courts. *See* Lozada Decl. ¶ 2. The scope of document discovery is very narrow, and not nearly as robust as under the Federal Rules of Civil Procedure. Lozada Decl. ¶ 2. Peruvian civil procedure does not give Petitioners a right to take pre-trial depositions. Lozada Decl. ¶ 2. It also is not clear that documents held in Boston by Messrs. Cullen, Hed, and Tung, or even by New Balance itself, would be subject to discovery in the pending Peruvian civil case. Lozada Decl. ¶ 2. Therefore, in the ongoing proceedings in Peru,

Petitioners are not able to obtain the same discovery that they seek here.  Lozada Decl. ¶ 2.  The unavailability of this discovery through the Peruvian proceedings satisfies the first *Intel* factor.

**B.      The Peruvian Court Would Not Reject Assistance from Discovery Under Section 1782**

As to the second *Intel* factor, there is no "authoritative proof," much less any indication, that the Peruvian Court would reject the discovery sought here.  In the absence of "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782"—such as where a representative of the foreign tribunal "has expressly and clearly made its position known"—Section 1782's "overarching interest in providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects" weighs in favor of granting discovery.  *In re Babcock Borsig AG,* 583 F.Supp.2d 233, 241–42 (D.Mass.2008); *In re Chevron Corp.,* No. 7:10–MC00067, 2010 WL 4883111, at *3 (W.D.Va. Nov.24, 2010) (respondent must demonstrate authoritative proof that foreign tribunal is unreceptive to discovery sought).

New Balance and Messrs. Cullen, Hed, and Tung cannot provide any "authoritative proof" that the Peruvian civil court would deny the evidence Petitioners seek here.  Under Peruvian evidence law, Peruvian courts may receive all kinds of evidence, including evidence obtained from Section 1782 proceedings.  *See* Lozada Decl. ¶ 3.  There is no indication that the Peruvian court would reject evidence obtained through this Petition.  *See* Lozada Decl. ¶ 3; Orta Decl. ¶ 19.  Accordingly, Petitioners satisfy this second *Intel* factor.

**C.      Petitioners Are Not Attempting to Circumvent Foreign or U.S. Policies**

The third discretionary factor also weighs in favor of granting the Petition.  Petitioners are not attempting to circumvent any proof-gathering limitations or other policies applicable to the Peruvian proceeding or of the United States.

"[T]hrough § 1782 Congress has seen fit to authorize discovery which, in some cases, would not be available in foreign jurisdictions, as a means of improving assistance by our courts to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Metallgesellschaft AG*, 121 F.3d 77, 80 (2d Cir. 1997). It is thus irrelevant whether the evidence would be discoverable or admissible in the Peruvian court itself. *See Brandi-Dohrn*, 673 F.3d at 82 ("[A]s a district court should not consider the discoverability of the evidence in the foreign proceeding, it should not consider the admissibility of evidence in the foreign proceeding in ruling on a section 1782 application.").

Petitioners would not circumvent any foreign law or policy by obtaining the discovery sought in the United States. The Peruvian procedural and evidentiary rules contain no prohibition against judicial discovery proceedings such as these. Lozada Decl. ¶ 3. Nor would Petitioners run afoul of U.S. limits on discovery.

## D.      The Discovery Sought Is Not Intrusive or Burdensome

Finally, Petitioners' requested discovery is not unduly intrusive or burdensome. It is narrowly tailored and focuses on the basic issues in which Messrs. Cullen, Hed, and Tung were involved: New Balance's agreements with Petitioners and New Balance's decision to terminate the Distribution Agreement and the New Distribution Agreement.

## <u>CONCLUSION</u>

For all the foregoing reasons, Petitioners respectfully request that the Court enter an Order pursuant to Section 1782, granting them leave to serve the subpoenas and conduct discovery.

Dated:  May 29, 2018

> /s/ Harvey Wolkoff
> _____
> Harvey Wolkoff
> (MA Bar No. 532880)
> harveywolkoff@quinnemanuel.com
> Quinn Emanuel Urquhart & Sullivan, LLP
> 111 Huntington Ave Suite 520
> Boston, MA 02199
> (617)712-7100
>
> David Orta (motion for admission pro hac
> vice pending)
> davidorta@quinnemanuel.com
> Julianne Jaquith (motion for admission pro
> hac vice pending)
> juliannejaquith@quinnemanuel.com
> Quinn Emanuel Urquhart & Sullivan, LLP
> 1300 I Street NW
> Suite 900
> Washington, DC 20001
> (202)538-8000
>
> *Attorneys for Petitioners*