UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE APPLICATION OF **PERUVIAN SPORTING GOODS S.A.C.**, **SUPERDEPORTE S.A.C.**, and **RODRIGO RIBADENEIRA** FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Case No. 8mc91220 DJC

Allowed. Casper, J. May 31, 2018.

## PETITION FOR DISCOVERY IN AID OF A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782

1. Pursuant to 28 U.S.C. § 1782 ("Section 1782") and based on the concurrently filed Memorandum of Law, Declaration of David M. Orta ("Orta Decl."), and Declaration of Javier Lozada ("Lozada Decl."), Petitioners Peruvian Sporting Goods S.A.C. ("PSG"), Superdeporte S.A.C. ("Superdeporte"), and Rodrigo Ribadeneira ("Mr. Ribadeneira") submit this Petition for Discovery, seeking an order permitting Petitioners to issue subpoenas in the form attached as Exhibits A, B, C, and D to New Balance Athletics Incorporated ("New Balance"), John Cullen, Alan Hed, and William Tung, for the production of documents and testimony that would assist Petitioners in a foreign legal proceeding pending in Peru.

2. Section 1782 provides for discovery in the United States to assist tribunals and parties in proceedings before foreign or international tribunals. In relevant part, Section 1782 states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

3. The requirements of Section 1782 are satisfied in this case. As explained in the accompanying Memorandum of Law, (1) New Balance is headquartered in this District, and Messrs. Cullen, Hed, and Tung work in this District at New Balance's headquarters; (2) the discovery sought is "for use in" a proceeding before a foreign court, namely a legal proceeding pending in Lima, Peru; and (3) the Petitioners are "interested persons" in that proceeding. Mem. of Law at pp. 4-5. The discretionary factors that a Court may consider when evaluating a Section 1782 petition also weigh in favor of granting the Petition. *Id.* at pp. 5-8; *see Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).

4. Petitioner, Mr. Ribadeneira, is a successful Ecuadorian entrepreneur who has made investments in Peru, as well as other countries in Latin America, through a number of corporate entities, including PSG and Superdeporte. Mr. Ribadeneira, through companies in which he has an interest, has distributed New Balance products in Peru since 2000. The litigation in Peru arises out of New Balance's abrupt and unexplained termination of an ongoing Distribution Agreement with PSG in contravention of Peruvian law, as well as the abrupt cancellation of a New Distribution Agreement, which had already been negotiated and agreed to between New Balance and PSG/Superdeporte.

5. On January 1, 2013, New Balance and PSG entered into a Distribution Agreement, as they had done a number of times previously, which governed the sale and distribution of New Balance's products in Peru. The Distribution Agreement was valid for an initial term of three years. If neither party expressed an intention to let the Distribution Agreement expire, then, by its terms, the Distribution Agreement would automatically be renewed for an additional year, until December 31, 2016.

6. During 2015, New Balance proposed that PSG and New Balance enter into a new Distribution Agreement (the "New Distribution Agreement") for Peru that would take effect after the December 31, 2016 expiration of the Distribution Agreement with PSG and would contain more favorable terms for both parties. As a part of the New Distribution Agreement, New Balance requested that PSG alter their distribution structure for New Balance products in Peru, in part by utilizing a new Peruvian entity to serve as New Balance's exclusive distributor under the New Distribution Agreement. Through this change, New Balance sought to gain an "unfair advantage" over its competitors in Peru. Pursuant to New Balance's request, Mr. Ribadeneira initiated the legal process to prepare a new entity, Superdeporte, to effectuate distribution in Peru under the New Distribution Agreement.

7. The parties engaged in extensive negotiations, both in person and via email, over the coming months. As discussions progressed, the parties discussed and agreed to a number of terms for the New Distribution Agreement. By the end of January 2016, all of the terms of the New Distribution Agreement were finalized and agreed to between the parties. The only outstanding item was for PSG to take the necessary steps for Superdeporte to serve as the vehicle to serve as the distributor in Peru. In December 2015, the parties agreed, however, that in the interest of finalizing the New Distribution Agreement as soon as possible, that the New Distribution Agreement would be finalized as between New Balance and PSG, and that once Superdeporte was established, Superdeporte would be substituted for PSG in the New Distribution Agreement.

8. In early May of 2016, Mr. Ribadeneira informed New Balance that despite some delays, Petitioners were ready to distribute New Balance products in Peru through Superdeporte. With Superdeporte up and running, Mr. Ribadeneira was ready to modify the New Distribution Agreement with New Balance and add Superdeporte as the Peruvian distributor. As such, in order

3

to finalize agreements with retailers, one of Mr. Ribadeneira's employees asked New Balance for a letter confirming that Superdeporte was New Balance's distributor in Peru.

9. On May 30, 2016, much to Mr. Ribadeneira's surprise, New Balance informed Mr. Ribadeneira that no distribution agreement existed between New Balance and Superdeporte. Shortly thereafter, on June 23, 2016, New Balance formally terminated the Distribution Agreement with PSG through a termination letter. Finally, on July 8, 2016, ignoring that the New Distribution Agreement had already been concluded between New Balance and Superdeporte, New Balance informed Mr. Ribadeneira, without explanation, that New Balance had decided to work with another distributor in Peru. Since that time, New Balance has done business in Peru through another distributor, Deportes Sparta. At the time, Petitioners were also negotiating licensing agreements with New Balance in Ecuador. After the termination of the relationship in Peru, negotiations for the Ecuador agreements also stalled and ultimately failed.

10. In January 2017, Petitioners initiated civil legal proceedings against New Balance in the Peruvian civil courts. In the Demand, Petitioners argue first that that the terms of the New Distribution Agreement were agreed to, the new Distribution Agreement is a valid contract, and that the parties' respective rights had been validly perfected. If the court were to find that there was not a valid contract, Petitioners also argue that New Balance had a pre-contractual liability to negotiate with Petitioners in good faith, particularly after requiring Petitioners to create a new entity for purposes of effectuating the New Distribution Agreement, and that it breached this pre-contractual obligation to Petitioners.

11. On February 1, 2017, Petitioners filed a request with the Peruvian Court for interim measures, asking that the court order New Balance to abstain from the distribution of its products in Peru with any distributor other than PSG. In December 2017, the request for interim measures

was granted. The court ordered a halt on the distribution of New Balance products in Peru during the pendency of the proceeding. Petitioners understand that, in spite of the order, distribution in Peru has continued. Petitioners seek discovery in aid of the claims made against New Balance in the civil proceedings pending in Peru.

12. Mr. Cullen, as the General Manager for Latin America at New Balance, was the primary person at New Balance responsible for negotiating the New Distribution Agreement. Messrs. Hed and Tung, both Executive Vice Presidents (International) at New Balance, are Mr. Cullen's superiors. They were responsible for Latin American sales and were involved in the decision to not move forward with the New Distribution Agreement.

13. Accordingly, for the reasons set forth above, in the Memorandum of Law, and in the Declaration of David M. Orta, Petitioners respectfully move the Court to issue an order granting the Petition and authorizing the issuance of subpoenas in the form attached hereto as Exhibits A, B, C, and D.

Dated: May 29, 2018

/s/ *Harvey Wolkoff*
Harvey Wolkoff
(MA Bar No. 532880)
harveywolkoff@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
(617)712-7100

David Orta (motion for admission pro hac vice pending)
davidorta@quinnemanuel.com
Julianne Jaquith (motion for admission pro hac vice pending)
juliannejaquith@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW
Suite 900
Washington, DC 20001
(202)538-8000

*Attorneys for Petitioners*