UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE APPLICATION OF PERUVIAN SPORTING GOODS S.A.C., SUPERDEPORTE S.A.C., and RODRIGO RIBADENEIRA FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782,<br><br>Applicants. | Civil Action No. 18-mc-91220 |

REPORT AND RECOMMENDATION ON MOTIONS TO QUASH
[Docket Nos. 10, 20]

December 7, 2018

Boal, M.J.

Respondents New Balance Athletics Incorporated ("New Balance"), John Cullen and William Tung have moved to quash subpoenas issued pursuant to 28 U.S.C. § 1782 by Petitioners, Peruvian Sporting Goods S.A.C. ("PSG"), Superdeporte S.A.C. ("Superdeporte") and Rodrigo Ribadeneira. Docket Nos. 7, 10, 20. For the following reasons, this Court recommends that Judge Casper[1] deny those motions.

I.  FACTUAL AND PROCEDURAL BACKGROUND

On January 1, 2013, New Balance and PSG entered into an agreement that governed the sale and distribution of New Balance's products in Peru (the "2013 Distribution Agreement"). Docket No. 1 at 2. That agreement, which expired on December 31, 2016, contained a clause requiring that "any and all disputes . . . arising out of [the] Agreement or the relationship, its

---

[1] Judge Casper referred the instant motions to the undersigned on August 20, 2018. Docket No. 21.

application and/or termination," be settled by final and binding arbitration in Boston, Massachusetts. Docket Nos. 11 at 3-4; 12-1 at 28.

In 2015, New Balance allegedly proposed that PSG and New Balance enter into a new agreement, pursuant to which PSG would form a Peruvian entity that would serve as New Balance's exclusive distributor in Peru (the "New Distribution Agreement"). Docket No. 11 at 3. Ribadeneira formed Superdeporte with that understanding. Id. In December 2015, the parties agreed that the New Distribution Agreement would be finalized as between New Balance and PSG, and Superdeporte would be substituted for PSG in the agreement once that entity was established. Id. Ribadeneira alleges that he was prepared to make this substitution in May 2016, but New Balance informed him that no distribution agreement existed between it and Superdeporte. Id. at 3-4. On June 23, 2016, New Balance formally terminated the 2013 Distribution Agreement. Id. at 4.[2] Shortly thereafter, New Balance informed Ribadeneira of its decision to work with another distributor in Peru. Id.

In January 2017, Ribadeneira initiated civil legal proceedings against New Balance in the Peruvian civil courts (the "Peru action"). Docket Nos. 16-4; 39 at 2. In a supplemental brief, Petitioners make clear that PSG and Superdeporte are not parties to the Peru action. Docket No. 39 at 2.[3] Nevertheless, Petitioners maintain that PSG and Superdeporte are "interested" parties as that term is defined by 28 U.S.C. § 1782. Id. Respondents have not challenged this assertion.

---

[2] New Balance alleges that, on June 23, 2016, it sent PSG a notice that the 2013 Distribution Agreement would terminate on December 31, 2016. Docket No. 11 at 4. New Balance contends further that, at the time it terminated the 2013 Distribution Agreement, PSG owed it for product sold, contractual interest and past-due distribution fees, in an amount that now exceeds $2,500,000. Id.

[3] Petitioners' original filing suggested that PSG and Superdeporte were parties to the Peru action by stating: "Petitioners initiated legal proceedings against New Balance in Peru by filing a civil demand and a request for interim measures. . . ." Docket No. 1 at 4; see also Docket No. 15 at 8.

In December 2017, a Peruvian court granted Ribadeneira's request for interim measures and ordered a halt on the distribution of New Balance products in Peru for the pendency of the proceeding. Docket Nos. 11 at 4-5; 16-5. That injunction has since been lifted.

New Balance became aware of the Peru action on or around March 23, 2018. Docket Nos. 11 at 4; 15 at 8. On April 19, 2018, New Balance filed a notice of appearance in the Peruvian civil courts and moved for dismissal because it argued the case should be before the Peruvian commercial court. Docket No. 15 at 8. On May 14, 2018, the Peruvian civil courts rejected New Balance's request to transfer the action, and New Balance appealed. Id. at 8-9. On June 11, 2018, New Balance argued that the Peru action is subject to mandatory arbitration under the 2013 Distribution Agreement. Id. at 9.

On May 29, 2018, Petitioners filed their request for discovery in this court, which Judge Casper allowed two days later. Docket Nos. 1, 7. Four subpoenas were issued, three of which Respondents have now moved to quash. Docket Nos. 10, 20.[4] Petitioners opposed those motions, Docket Nos. 15, 23, to which Respondents filed reply briefs. Docket Nos. 19, 31. The Court heard oral argument on October 2, 2018. On October 11 and November 29, 2018, Petitioners filed supplemental briefs. Docket Nos. 35, 39.

---

Apparently, PSG assigned its rights under the 2013 Distribution Agreement to Ribadeneira. Docket No. 11 at 4 n.5.

[4] New Balance filed the first motion to quash on behalf of itself and John Cullen only because it did not have authority to accept service for the other individuals. Docket No. 11 at 1 n.1. As a result of its subsequent representation of Tung, Respondents' counsel filed a second motion to quash the subpoena directed to Tung. Docket No. 20 n.1. In addition, Petitioners originally received a subpoena for Alan Hed, a New Balance executive. See Docket No. 1-3. Since that time, Petitioners have filed an action in the District of Oregon seeking a subpoena for Mr. Hed. Docket No. 31-1. At oral argument, the parties agreed that any issue regarding Mr. Hed's compliance with a subpoena authorized by this Court is now moot.

II.     DISCUSSION

New Balance argues that the Court should quash the subpoenas because (1) Petitioners have not satisfied the statutory requirements for discovery under 28 U.S.C. § 1782 and (2) the discretionary factors set forth by the Supreme Court in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004), weigh against discovery.  Docket No. 11.  Alternatively, New Balance requests that the Court enter a stay pending the Peruvian court's disposition of the jurisdiction issue.  Id. at 9.  Besides joining New Balance's motion, Tung argues that he has relocated from Massachusetts to Florida and therefore the subpoena to him fails to meet the statutory requirements.  Docket No. 20 at 1-2; 31 at 1-3.  He also argues that he lacks relevant information because he began work in June 2016, after the internal discussions that resulted in the June 23, 2016 termination letter.  Id.

A.      Magistrate Judge Authority

As an initial matter, this Court must consider its authority to rule on the instant motions, which is in turn determined by whether the matters are dispositive.  This is important because any non-dispositive matter referred to a magistrate judge may be reconsidered by the district judge "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A).  When a "dispositive" matter, as defined in 28 U.S.C. § 636(b)(1)(A), is referred to a magistrate judge, any resulting decision may be reviewed, after the parties file objections, by the district judge under a de novo standard.  28 U.S.C. § 636(b)(1).

Courts disagree over whether a Section 1782 proceeding, or a motion thereunder, is a dispositive motion requiring the magistrate judge to issue a report and recommendation.  See In re Application of Ilyas Khrapunov, No. 17-mc-80107-HSG, 2018 WL 3239001, at *4 (N.D. Cal. July 3, 2018) ("Section 1782 applications are not among the eight listed dispositive motions in

4

the Magistrates Act, and Objectors fail to describe why the order here is analogous to those listed."), appeal docketed, No. 18-16254, (9th Cir. July 6, 2018); In re Clerici, 481 F.3d 1324, 1331 (11th Cir. 2007) (standard of review for discovery ordered under Section 1782 "is identical to that used in reviewing the district court's ordinary discovery rulings"); In re Qwest Commc'ns Int'l. Inc., No. 3:08mc93, 2008 WL 2741111, at *1-3 (W.D.N.C. July 10, 2008).  But see Phillip v. Beierwaltes, 466 F.3d 1217, 1221-22 (10th Cir. 2006) (questioning whether a Section 1782 application for discovery in aid of foreign litigation could be characterized as a non-dispositive matter); Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 3068.2 (2018) (Section 1782 proceedings "qualify as dispositive" because "the sole purpose of the proceeding is to obtain discovery," and accordingly, a ruling on a "motion to compel such discovery is a final, dispositive matter.").

Here, Judge Casper issued an order of reference to the undersigned Magistrate Judge. Docket No. 21.  Any order issued by this Court may be subject to some form of review depending on whether the parties elect to appeal the decision.  This Court is sympathetic to the view that discovery issues are largely within the purview of magistrate judges.  However, it also recognizes that some courts have found that a ruling regarding Section 1782 discovery is dispositive.  Accordingly, as there appears to be conflicting authority, this Court will not resolve the issue, but rather, in an abundance of caution, will issue a report and recommendation.

B.     Legal Standard[5]

A request for discovery under 28 U.S.C. § 1782 presents two inquiries: (1) whether the district court is authorized to grant the request, and (2) if so, whether the district court should

---

[5] Petitioners argue that New Balance's motion essentially seeks reconsideration of Judge Casper's decision to grant the application for subpoenas and therefore should be judged under that standard.  Docket No. 15 at 10.  While the petition was not filed ex parte, as a practical matter, Respondents had no opportunity to object prior to Judge Casper's decision.  See Docket

exercise its discretion to do so.  The statute provides the threshold requirements for the Court's authority.  Under Section 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person."  28 U.S.C. § 1782(a).  If all of these requirements are met, a court may, but is not required to, grant the application.  Intel Corp., 542 U.S. at 264.  In addition, the First Circuit has recently found that relevancy plays a role in the statutory analysis under Section 1782.  See In re Schlich, 893 F.3d 40, 52 (1st Cir. 2018) ("a request for discovery under § 1782 that is plainly irrelevant to the foreign proceeding will fail to meet the statutory 'for use' requirement").

In determining whether it should exercise its authority to grant the application, a court must consider the following nonexclusive factors: (1) whether the person from whom discovery is sought is a participant in the foreign proceedings, or instead, is a nonparty outside the foreign tribunal's jurisdiction whose evidence is presumably more dependent on the court's assistance; (2) the nature and character of the foreign proceedings, and the receptivity of the foreign body involved to United States judicial assistance; (3) whether the application attempts to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the requests are unduly intrusive or burdensome.  Intel, 542 U.S. at 264-65.  These factors do not necessarily create a "burden" for either party to meet, and instead are considerations to guide the district court.  In re Schlich, 893 F.3d at 50.

The district court's discretion is not boundless.  Indeed, that court must exercise such discretion in light of the statute's twin aims: providing efficient means of assistance to

---

No. 33-1 at 1, 7.  Accordingly, this Court declines to apply the reconsideration standard of review here.

participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to American courts. See Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 84 (2d Cir. 2004).  In addition to the discretion accorded to the district courts under Section 1782 to limit the scope of discovery, Rule 26 of the Federal Rules of Civil Procedure also allows the court discretion to limit discovery.  In re Apotex Inc., No. M12-160, 2009 WL 618243, at *3 (S.D.N.Y. Mar. 9, 2009).

Rule 26 permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1) generally permits liberal discovery of relevant information.  Baker v. Liggett Grp., Inc., 132 F.R.D. 123, 125 (D. Mass. 1990).  As the Supreme Court has instructed, because "discovery itself is designed to help define and clarify the issues," the limits set forth in Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).  However, courts must also consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

Any discovery taken pursuant to Section 1782 is also governed by Fed. R. Civ. P. 26(b)(2), which authorizes a court to limit discovery if it is: (1) unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the proposed discovery is outside the

scope permitted by Fed. R. Civ. P. 26(b)(1).  Fed. R. Civ. P. 26(b)(2)(C); see also Bayer AG v. Betachem, Inc., 173 F.3d 188, 191 (3d Cir. 1999).

A Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1).  Miller v. Allstate Fire & Cas. Ins. Co., No. 07-260, 2009 WL 700142, at *2 (W.D. Pa. Mar. 17, 2009) (citation omitted); see, e.g., In re Application of Yukos Hydrocarbons Invs. Ltd., No. 5:09-MC-0078 (NAM/DEP), 2009 WL 5216951, at *4 (N.D.N.Y. Dec. 30, 2009) (applying Rule 45 criteria to consideration of a Section 1782 request).  Generally, the party moving to quash a subpoena bears the burden of persuasion.  Demers v. LaMontagne, No. 98-10768-REK, 1999 WL 1627978, at *2 (D. Mass. May 5, 1999).  Accordingly, Rules 26 and 45 provide protections to the subjects of requests made pursuant to Section 1782.

C. Statutory Requirements

Respondents contend that Petitioners have not satisfied Section 1782's statutory requirements.  Respondents primarily challenge whether the subpoenaed discovery is "for use" in a foreign proceeding.[6]  They contend that Section 1782 does not apply because the discovery relates to claims arising out of a contract that must be arbitrated in the United States rather than abroad.  Docket No. 11 at 2.  Petitioners maintain that this argument is pending before the Peruvian civil courts, and this Court need not weigh in on disputes pending in Peru.  Docket No. 15 at 5.  In addition, Petitioners argue that Respondents' jurisdictional argument is likely to be rejected for a number of reasons.  Id. at 5-6.

Here, the information sought is unquestionably for use in a foreign proceeding that is

---

[6] Respondents also challenge the relevancy of some of the requests.  Docket No. 11 at 9 n.10.  In response, at oral argument, Petitioners withdrew their requests for information regarding the Ecuador Licensing Agreement and the Emlec Agreement.  Accordingly, request numbers 3, 4, 5, 6 and part of 7 are no longer at issue.

ongoing.[7]  In addition, a district court need not await a foreign tribunal's determination that it has jurisdiction before granting an application for a Section 1782 subpoena.  In re Republic of Ecuador, No. C 11-80171 CRB, 2011 WL 4434816, at *6 (N.D. Cal. Sept. 23, 2011).  As one court stated:

> [t]he notion that it would somehow be premature for this Court to allow the requested discovery until the [foreign entity] has determined it has jurisdiction to hear the matter runs contrary to clear and unequivocal case law providing that, to fall within the scope of § 1782(a), a proceeding need only be "within reasonable contemplation."

In re Veiga, 746 F. Supp. 2d 8, 23 (D.D.C. 2010) (citing Intel, 542 U.S. at 259); see In re Republic of Ecuador, 2011 WL 4434816, at *6.  This Court need not weigh in on issues of foreign law, including the "likelihood of success of claims made in other fora."  In re Veiga, 746 F. Supp. 2d at 23; see Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1099 (2d Cir. 1995) (Section 1782 does not "condone speculative forays into legal territories unfamiliar to federal judges.").  This Court therefore declines to recommend quashing the subpoenas on the basis of an unresolved issue in a pending foreign proceeding.[8]

In addition to joining the above arguments, Tung contends that the subpoena to him does not meet the statutory requirement that only the district court of the district in which a person resides or is found may order him to give testimony.  See Docket Nos. 20; 31.  Specifically, he states that he "has relocated to Florida and does not know when he will return to Boston next."  Docket No. 20 at 1.[9]

---

[7] Under Intel, the foreign proceeding at issue need not even be pending to allow such discovery. Intel, 542 U.S. at 259.  Section 1782 requires only that, when no foreign proceeding is ongoing, one must be within "reasonable contemplation" of the party seeking relief.  Id.

[8] The parties have represented that they do not know when the Peruvian courts will rule on the jurisdictional issue.  Accordingly, this Court declines to enter a stay of unknown, and potentially lengthy, duration.

[9] Notably, Tung has not stated that he does not reside in Massachusetts.

The statutory requirement is not as strict as Tung suggests. Indeed, the Second Circuit has authorized Section 1782 discovery of a foreign national temporarily in the United States. In re Edelman, 295 F.3d 171 (2d Cir. 2002). Here, Tung apparently owns a home in Massachusetts and visits Massachusetts with some frequency because his wife lives here. Docket No. 23 at 3 (citing Docket No. 23-1 at ¶¶ 6-7).[10] Accordingly, this Court finds that Tung, at a minimum, may be "found" in the District of Massachusetts.

For all these reasons, Petitioners have met the statutory requirements of Section 1782.

D. Discretionary Factors

Respondents further contend that Petitioners' subpoenas fail the Intel discretionary factors.

Section 1782 "authorizes, but does not require," a court to grant the application for discovery even when the statutory requirements are met. Intel, 542 U.S. at 247. In other words, a court may still deny the request for discovery on discretionary grounds.

The Supreme Court has explained that "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." Intel, 542 U.S. at 264. This is because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." Id.

---

[10] Tung presents no developed legal argument with respect to whether service is a basis on which to quash the subpoena to him. Accordingly, any such argument is waived. See Redondo-Borges v. U.S. Dep't of Housing & Urban Dev., 421 F.3d 1, 6 (1st Cir. 2005) (citation omitted) ("Few principles are more sacrosanct in this circuit than the principle that 'issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'").

The court may also consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign [court] to U.S. federal-court judicial assistance." Intel, 542 U.S. at 264.  A primary purpose of the statute is "to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws." Id. at 262. In a situation where the foreign court restricts discovery, however, granting the application could undermine the statute's objective.  See, e.g., In re Application of Microsoft Corp., No. 06-10061-MLW, 2006 WL 1344091, at *4 (D. Mass. Apr. 19, 2006).

Respondents contend that New Balance is a party to the foreign proceeding, which weighs against discovery under Section 1782.  Docket No. 11 at 7.  While New Balance is a participant in the foreign proceeding, Cullen and Tung are not.  See Docket No. 16-4 at 36. Nevertheless, courts in this district have found that the "relevant inquiry" is whether the petitioner effectively seeks discovery from a participant in the foreign tribunal even though it is seeking discovery from a related, but technically distinct, entity.  In re Schlich, No. 16-91278-FDS, 2016 WL 7209565, at *4 (D. Mass. Dec. 9, 2016), aff'd, 893 F.3d 40 (1st Cir. 2018) (citing Matter of a Petition for Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd., No. 2:14-cv-00797-GMN-NJK, 2015 WL 7258483, at *6 (D. Nev. Nov. 17, 2015)). Indeed, when presented with similar facts, Judge Saylor concluded that although company employees were not named parties in a foreign proceeding, the information sought concerned their employment with the company, and so came within the foreign entity's jurisdiction.  In re Schlich, 2016 WL 7209565, at *4.  Accordingly, this factor weighs in favor of Respondents.

With respect to the remaining discretionary factors, Respondents aver that the subpoenas are improper attempts to circumvent United States and foreign policy; Petitioners are not likely

to make use of the requested discovery; and the requests are unduly burdensome. Docket No. 11 at 7-9. These arguments are not persuasive.

Petitioners allege that the discovery they seek here would be difficult, if not impossible, to obtain in the Peru action. Docket No. 1-6 at ¶ 2. They maintain that the scope of document discovery in Peru is "not nearly as broad as it is under the Federal Rules of Civil Procedure." Docket No. 1-6 at ¶ 2. Per the Petitioners, document discovery in Peru is a "very long and uncertain process," and Respondents may not be subject to any discovery there. Id. Further, Petitioners allege that Peruvian civil procedure does not give them a right to take pre-trial depositions from adversaries or third parties outside of the courtroom. Id. Nevertheless, Petitioners represent that the Peruvian court may receive evidence obtained by way of Section 1782 subpoenas. Id. at ¶ 3.

Respondents have not persuasively challenged these contentions. They suggest that the Peruvian court would not be receptive to this Court's assistance, Docket No. 19 at 3-4, but have not argued that Peruvian procedural or evidentiary rules prevent the kind of discovery that Petitioners seek in this Court.[11] Instead, Respondents maintain that the discovery requests are improper, unnecessary and burdensome because the Peru action is subject to dismissal. See Docket Nos. 11 at 7-9; 19 at 3-4.[12] As discussed above, however, Respondents' jurisdictional

---

[11] Under Schlich, Respondents do not have a "burden" with respect to their showing here. However, where a party relies on a blanket assertion or does not properly substantiate its contentions, "it runs the risk of not persuading the court to exercise its discretion in its favor." Schlich, 893 F.3d at 50.

[12] Respondents allege briefly that the document requests are unduly burdensome in part because they seek information that Ribadeneira already has in his possession. Docket Nos. 11 at 9 n. 10; 12 at ¶ 6. Petitioners, however, are entitled to discover what information is in Respondents' possession.

theory does not justify quashing the subpoenas. Accordingly, these factors weigh in favor of Petitioners.

Further, Tung contends that compliance with the subpoena would be burdensome because he does not possess relevant information or documents. Docket No. 20. Petitioners argue that Tung began working for New Balance at the beginning of June 2016, before terminating the agreement and while New Balance was still in the process of determining whether to work with another distributor. Docket Nos. 23 at 3-4; 27 at 3. Respondents allege that Tung does not have relevant information because he started working for New Balance after it formally terminated the 2013 Distribution Agreement, and "well after New Balance made the decision to terminate its business relationship with Petitioners." Docket No. 31 at 2. This argument is not convincing. Regardless of what date Tung began to work for New Balance in June 2016, he likely possesses relevant information for that important time period, and, in addition, many of the requests seek information through December 31, 2016. See Docket No. 1-4 at 9-10. Thus, Petitioners have sufficiently demonstrated that Tung may possess relevant information regarding the PSG-New Balance agreements, which they are entitled to discover.

Accordingly, this Court has analyzed the parties' arguments in light of the Intel discretionary factors and finds that such factors weigh in favor of discovery.

III. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the District Judge deny the motions to quash.

IV. REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written

objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hosp., 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir. 1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge